UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME TORRES,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>SUZANNE M. PEERY,<br><br>　　　　　Respondent. | No. 2:16-cv-0385 MCE DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him in the Sacramento County Superior Court on one count of second degree murder with a gun enhancement. He seeks federal habeas relief on the grounds of ineffective assistance of counsel and a violation of his Sixth Amendment and due process rights to a jury trial. Upon careful consideration of the record and the applicable law, the undersigned will recommend denial of petitioner's application for habeas corpus relief.

**FACTUAL BACKGROUND**

The California Court of Appeal for the Third Appellate District provided the following factual summary:

> In May 2008 Guerrero and his family, which included his wife, Celica, and two stepsons who were Sureño gang members, were living at a house on Lindley Drive.

1

> On Memorial Day, Guerrero was with some other family members in the garage and driveway area of his house when a group of young men walked up, including defendant, a Norteño gang member, who was wearing a red bandana across his face. Also in the group was defendant's brother, Jose, also a Norteño gang member. Defendant challenged Guerrero's stepsons to come out and fight. Guerrero said he was going to call the police and pulled out his cell phone. A physical struggle between defendant and Guerrero ensued. At some point, defendant pulled out a gun. According to Guerrero's stepdaughter, Veronica, Guerrero was able to grab the gun and throw it away, but he threw it in the direction of the group that defendant came with. Another witness testified that Guerrero "somehow hit the gun ... out of [defendant's] hand, and it flew towards where the group was." Guerrero's widow testified that it was defendant who "threw [the gun] to where the others were at."
>
> Another member of the group of young men picked up the gun and told Guerrero to let go of defendant. When Guerrero did not do so, the man fired a shot, hitting a nearby van. The man then stepped closer and shot Guerrero in the head.
>
> The People charged seven individuals, including defendant, Jose, and Sergio, with Guerrero's murder. Sergio pled no contest to the lesser included offense of voluntary manslaughter in exchange for a middle-term sentence of six years in prison. Defendant and Jose (along with another defendant who was ultimately acquitted) went to jury trial. At trial, Jose testified that he followed the group of young men down Lindley Drive toward Guerrero's house but claimed he never got closer than "one house over."
>
> The prosecutor argued there was "high confidence that the gunman, the actual killer was [Jose]" and that the shooter committed first degree murder. The prosecutor further argued that to the extent they did not pull the trigger, defendant and Jose were guilty of the murder either because they aided and abetted the murder or because they committed or aided and abetted the crime of fighting or challenging to fight and the murder was a natural and probable consequence of that crime.
>
> The jury found both defendant and Jose guilty of first degree murder and found true two sentence enhancement allegations (gang and firearm). The trial court denied Jose's motion to set aside the verdict against him and for a judgment of dismissal, and ordered defendant, Jose, and Sergio to pay victim restitution to Guerrero's widow.

People v. Torres, No. C078058, 2015 WL 7180931, at **1-2 (Cal. Ct. App. Nov. 16, 2015) ("Torres II").

## PROCEDURAL BACKGROUND

In petitioner's first appeal, he contended, among other things, that the jury instructions were erroneous because they did not allow the jury to consider whether he might have been guilty

2

of second degree murder exclusively, under the natural and probable consequences doctrine. The Court of Appeal agreed, reversed petitioner's conviction, and remanded for retrial or for the state to accept reduction of the conviction to second degree murder. See People v. Torres, No. C069510, 2014 WL 617671 (Cal. Ct. App. Feb. 18, 2014) ("Torres I").

Petitioner filed a petition for review with the California Supreme Court in which he raised a claim of ineffective assistance of counsel for failure to object to the aider and abettor instruction given at trial, a claim he raises in this court. (LD 23.[1]) The government also petitioned the California Supreme Court for review. (LD 24.) The California Supreme Court denied review. (LD 25.)

The government accepted reduction of petitioner's conviction to second degree murder. The trial court accepted the remittitur as a modification of the judgment to reflect a conviction for second degree murder, and resentenced petitioner to 40 years to life in state prison (15 years to life for second degree murder, plus a consecutive term of 25 years to life for the firearm enhancement, and no sentence for the gang enhancement). See Torres II, 2015 WL 7180931, at *1.

In response to petitioner's motion to recall the sentence for lack of written notice, the trial court held a subsequent hearing where it again resentenced defendant to 40 years to life in state prison. Id.

Petitioner filed a second appeal, challenging the trial court's resentencing and claiming the appropriate remedy was a new trial on the murder charge in order to avoid a violation of his Sixth and Fourteenth Amendment rights to a jury trial and due process. The Court of Appeal rejected those claims. See Torres II, 2015 WL 7180931. Petitioner again sought review in the California Supreme Court. (LD 34.[2]) The California Supreme Court again denied review. (LD 35.)

---

[1] On September 27, 2016, respondent lodged relevant portions of the state court record in this case. (See ECF No. 22.) The court refers to record documents by their Lodged Document or "LD" number and the trial transcript by "RT."

[2] When he originally lodged the record, respondent failed to provide a copy of this second petition for review. The court ordered respondent to do so (ECF No. 26) and on March 8, 2018, respondent lodged that document (see ECF No. 28).

# STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their

////

treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir.

2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

6

reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853 (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)). This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Richter, 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

////

habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**PETITIONER'S CLAIMS**

Petitioner challenges his conviction on two grounds. First, he argues that his counsel was constitutionally ineffective for failing to object to a jury instruction on aiding and abetting. (ECF No. 1 at 5-6.) Second, petitioner argues that the trial court deprived him of a jury trial when his conviction was reduced and he was resentenced to second degree murder. (ECF No. 1 at 9). Because the analysis of petitioner's second claim informs this court's analysis of the first claim, the court discusses them in reverse order below.

**I.   Right to Jury Trial**

Petitioner contends that the state court violated his rights to due process and a jury trial by permitting him to be resentenced without a new trial. (ECF No. 1 at 9.)

**A.   Legal Standard**

The Fifth Amendment "guarantees that no one will be deprived of liberty without 'due process of law'; and the Sixth, that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.'" United States v. Gaudin, 515 U.S. 506, 509-10 (1995); see also Apprendi v. New Jersey, 530 U.S. 466, 476-77 (2000) (citing Gaudin, 515 U.S. at 510.) The Supreme Court has held "that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Id. at 510.

**B.   State Court Opinion**

In its second opinion in petitioner's case, the Court of Appeal denied petitioner's claim based on its obligation to follow state law precedent.

> The California Supreme Court, in *Chiu*, held that "punishment for second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine." (*People v. Chiu*, *supra*, 59 Cal.4th at p. 166.) The court further held that, "where the direct perpetrator is guilty of first degree premeditated murder, the legitimate public policy considerations of deterrence and culpability would not be served by allowing a defendant to be convicted of that greater offense

8

> under the natural and probable consequences doctrine," and thus "a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine." (*Id.* at pp. 166, 167.)
>
> In determining whether it was harmless error to instruct the jury to so convict the defendant, the *Chiu* court observed as follows: "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.] Defendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premeditated murder. [Citation.]" (*People v. Chiu*, *supra*, 59 Cal.4th at p. 167.) Based in large part on the jury's deadlock over whether the defendant should be found guilty of first or second degree murder, the court determined it could not "conclude beyond a reasonable doubt that the jury ultimately based its first degree murder verdict on a different theory, i.e., the legally valid theory that defendant directly aided and abetted the murder," and affirmed this court's remedy of reversing the first degree murder conviction and "allowing the People to accept a reduction of the conviction to second degree murder or to retry the greater offense." (*Id.* at p. 168.)
>
> Defendant agrees that, after reversing his first degree murder conviction in light of our Supreme Court's decision in *Chiu*, this court was bound to apply the remedy applied in *Chiu*, that is, remand the matter to allow the district attorney to elect between retrying the case or accepting entry of a conviction for second degree murder. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Notwithstanding *stare decisis* and the district attorney's election to accept reduction of his conviction to second degree murder, however, defendant contends the appropriate remedy is a new trial on the murder charge lest he suffer violations of his Sixth and Fourteenth Amendment rights to a jury trial and due process. He cites *Taylor v. Cate* (9th Cir.2015) 772 F.3d 842 as the sole support for his contention.
>
> Regardless of what the Ninth Circuit does, as defendant concedes, we are bound to follow *Chiu*. (*Auto Equity Sales, Inc. v. Superior Court*, supra, 57 Cal.2d at p. 455.) Accordingly, we reject defendant's claim.

Torres II, 2015 WL 7180931, at \*\*2-3.

### C. Analysis

In his petition for review to the California Supreme Court, and in his petition here, petitioner relies upon the Ninth Circuit three-judge panel's decision in Taylor v. Cate, 772 F.3d 842 (9th Cir. 2015). The panel in Taylor held that resentencing a defendant as an aider and

9

abettor, rather than as a principal, to felony murder violated the defendant's Sixth Amendment right to a jury trial. However, that case is no longer good law in this circuit. In 2016, an en banc panel of the Ninth Circuit overturned the three-judge panel's decision. Taylor v. Beard, 811 F.3d 326 (9th Cir. 2016). The en banc panel held that the jury in petitioner Taylor's trial had made findings sufficient to support either a conviction for felony murder or a conviction as an aider and abettor. In particular, based on the unusual facts of that case,[3] the court found that Taylor was not challenging his trial in any way and therefore had no basis to contend the jury's findings were incorrect. While the en banc panel's decision in Taylor is fact-specific and does not impact the court's analysis here, that decision vacates the original panel decision. Accordingly, Taylor v. Cate provides no basis for the analysis of petitioner's claim. However, the legal standard relied on by the panel in that case – that due process and the Sixth Amendment require criminal convictions to rest upon jury determinations that defendants are guilty of every element of crimes charged, beyond a reasonable doubt – is clearly established federal law providing structure for this court's analysis.

Under the legal standards set out in Gaudin, petitioner's second degree murder conviction is valid if the jury necessarily found all the elements of second degree murder. The basis for petitioner's aider and abettor liability for murder was the natural and probable consequences doctrine. Under that doctrine, an aider and abettor who intended a crime less than murder is liable for the perpetrator's commission of a murder if murder was a natural and probable consequence of the intended crime and the circumstances surrounding that crime. Petitioner's jury was instructed as follows:

> To prove the defendant is guilty of murder as an aider and abettor, the People must prove that:
>
> One, the defendant is guilty either directly or as an aider and abettor of fighting or challenging to fight;

---

[3] The reduction in petitioner Taylor's sentence was the result of the prosecution's realization after trial that another person was the shooter, despite a jury's finding that Taylor was the shooter. The prosecution thus sought a post-trial reduction in Taylor's conviction to aider and abettor liability. See Taylor v. Beard, 811 F.3d at 327.

10

>                    Two, during the commission of fighting or challenging to
>           fight, a co-participant in that crime committed the crime of murder;
>
>                    And, three, A, under all of the circumstances, a reasonable
>           person in defendant's position would have known that the
>           commission of murder in the first degree was a natural and probably
>           consequence of the commission of fighting or challenging to fight;
>
>                    Or, three, B, under all of the circumstances, a reasonable
>           person in defendant's position would have known that the
>           commission of murder in the second degree was a natural and
>           probable consequence of the commission of fighting or challenging
>           to fight.

(RT 1455:22 – 1456:10.)

Thus, the jury had to find petitioner had the mental state necessary for either first degree murder or second degree murder. If the jury found petitioner had the mental state necessary for first degree murder, then it necessarily also found petitioner had the mental state necessary for second degree murder because second degree murder is a lesser included offense of first degree murder. See People v. Blair, 36 Cal. 4th 686, 745 (2005). The only other option was for the jury to find petitioner had the mental state necessary for second degree murder. Therefore, petitioner's conviction as an aider and abettor had to have rested on a jury finding of at least second degree murder. Petitioner's argument to the contrary is baseless. Petitioner's claim that he was denied the right to have a jury determine each fact necessary to a second degree murder conviction is unsupported and should be denied.[4]

## II. Ineffective Assistance of Counsel

Petitioner argues he was deprived of the effective assistance of counsel in violation of the Sixth Amendment when his trial attorney failed to challenge a jury instruction defining aider and abettor liability, CALCRIM No. 400. Respondent argues first that petitioner's ineffective assistance of counsel claim is unexhausted. Respondent then contends the claim is not colorable because it is conclusory.

---

[4] The court reaches this conclusion regardless of whether the Court of Appeal addressed the merits of petitioner's federal constitutional issues. If this court assumes the Court of Appeal implicitly denied the federal issues, then that decision was not contrary to or an unreasonable application of clearly established federal law. If the Court of Appeal's decision can be construed as refusing to consider the federal issue, then petitioner's claim should fail on de novo review.

11

**A. Exhaustion**

    **1. Legal Standards**

The exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).

The state court has had an opportunity to rule on the merits when the petitioner has fairly presented the claim to that court. The fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based. Picard, 404 U.S. at 277-78. Generally, it is "not enough that all the facts necessary to support the federal claim were before the state courts...or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). Instead,

> [i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365 (1995). Accordingly, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). The United States Supreme Court has held that a federal district court may not entertain a petition for habeas corpus unless the petitioner has exhausted state remedies with respect to each of the claims raised. Rose v. Lundy, 455 U.S. 509, 522 (1982). A mixed petition containing both exhausted and unexhausted claims must be dismissed. Id.

    **2. Petitioner's State Court Pleadings**

Petitioner raised this claim in his first appeal from his first degree murder conviction. Petitioner argued in his brief to the state Court of Appeal that his trial attorney erred when he

failed to object to jury instruction CALCRIM No. 400. (LD 19.) That instruction stated that "[a] person is equally guilty of a crime whether he committed it personally or aided and abetted the perpetrator who did commit it." Torres, 2014 WL 617671, at *10. Petitioner sought reversal of his conviction on the basis of this ineffective assistance of counsel claim, among others. (See LD 19 (opening brief) at 63-77; LD 21 at 10-13.)

In his petition for review to the California Supreme Court, petitioner repeated this claim. (LD 23.) In that petition, petitioner noted that he was raising the claim solely for the purposes of exhausting it for federal review. Petitioner also discussed the "ambiguous procedural posture" resulting from the decision of the Court of Appeal because prosecutors could either elect to retry the case or elect to accept a reduction of petitioner's conviction to second degree murder. Petitioner stated that if he did not receive a retrial, then this claim was not moot because it provided a separate ground for reversal of his conviction. (Id. at 3.)

In his second appeal, petitioner argued that his Sixth and Fourteenth Amendment rights were violated by reducing petitioner's conviction to second degree murder rather than holding a new trial. (LD 34.)

### 3. Did Petitioner Exhaust his Ineffective Assistance of Counsel Claim?

Respondent contends petitioner's claim is unexhausted because he only requested that his "conviction be reversed" in the Court of Appeal, explaining in his reply brief on appeal that the instruction did not give the jury the opportunity to consider that he may have been guilty of only second-degree murder. (ECF No. 21 at 15-16.) Then, in his petition for review, petitioner sought a reversal of all of his convictions based his ineffective assistance of counsel claim regarding CALCRIM No. 400. According to respondent, petitioner's claim in the Court of Appeal was thus limited to seeking a reduction of his conviction from first degree murder to second degree murder. Petitioner then changed that argument in his petition for review to seek a complete reversal of the conviction.

Respondent argues that a federal court will not consider a claim exhausted unless it has been properly raised at every level of direct review. He cites Casey v. Moore, 386 F.3d 896 (9th Cir. 2004), for this proposition. In Casey, the Ninth Circuit Court of Appeals considered whether

13

petitioner Casey had exhausted a claim that the trial court's admission of evidence of prior misconduct was hearsay violating his Confrontation Clause rights under the federal Constitution. 386 F.3d at 911. In his appeal to the state's intermediate court of appeals, Casey cited only state law in support of his claim. Nowhere in his briefing on that claim did Casey give the court an indication that he sought relief on federal grounds. However, in his petition for review to the state supreme court, Casey "couched his hearsay claims within a federal constitutional framework." Id. at 915. The state supreme court denied review. The Ninth Circuit held that Casey did not exhaust his claim because it was not fairly presented at each level of state court direct review. Id. at 916.

This court finds respondent's reading of petitioner's state court pleadings to be overly limited. Petitioner made clear in both his opening brief on appeal and in his reply brief that the result of his ineffective assistance of counsel claim should be reversal of his conviction. (LD 19 at 77 ("[A]ppellant's conviction should be reversed."); LD 21 at 12 ("This instructional error requires reversal of appellant's convictions.").) While petitioner argued in his reply brief that the use of CALCRIM No. 400 did not permit the jury to consider that the perpetrator could be guilty of first degree murder and the aider and abettor guilty of only second degree murder, petitioner did not so limit his claim. (LD 21 at 12.) Petitioner then concluded by stating that he sought "reversal of his convictions," not only a reduction in the degree of his conviction. Then, in his petition for review, petitioner again stressed that if he was not retried, this claim was not mooted by the Court of Appeal's ruling. (LD 23 at 3.) Petitioner fairly raised this claim in both the state Court of Appeal and the California Supreme Court. It is exhausted.

**B. Merits of Ineffective Assistance of Counsel Claim**

Respondent's argument that petitioner's claim is conclusory is apparently based on respondent's contention that petitioner was required to set forth a different argument in his petition for review to the California Supreme Court than he made before the Court of Appeal. (ECF No. 21 at 17.) This is puzzling. The Court of Appeal did not rule on petitioner's ineffective assistance of counsel claim because it found it mooted by the fact the court granted relief on a different claim. See Torres I, 2014 WL 617671, at *10. Therefore, there was no

reason for petitioner to make new legal arguments in his petition for review to the California Supreme Court. What petitioner did do is tell the court that he felt that he needed to preserve the ineffective assistance of counsel argument in case he did not receive a retrial. Respondent does not explain why petitioner's attempts to preserve his claim are inadequate or just why this rendered his claim "conclusory." The court will address the merits of the claim here.

Petitioner argues that his counsel acted unreasonably by failing to object to CALCRIM No. 400. Petitioner contends this instruction regarding aider and abettor liability was an outdated version of CALCRIM No. 400 and misled jurors. (See ECF No. 1 at 5-6; Pet. for Rev. (LD 23 at 4- 9-61).) CALCRIM No. 400 was part of the jury instructions regarding aider and abettor liability:

> A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator.
>
> Two, he may have aided and abetted a perpetrator who directly committed the crime.
>
> A person is equally guilty of a crime whether he committed it personally or aided and abetted the perpetrator who did commit it.[5]

(RT 1454:6-13.)

Petitioner contends the trial court erred in so instructing the jury because the final paragraph of the instruction suggests that an aider and abettor is vicariously responsible for the intent as well as the acts of the perpetrator and is equally guilty with the direct perpetrator. In state court, petitioner primarily challenged the instruction on state law grounds. He cited People v. Nero, 181 Cal. App. 4th 504, 514 (2010) in support of his claim. In Nero, the court held that CALJIC 3.00, which preceded CALJIC 400, was misleading in violation of the defendant's constitutional right to a jury trial. 181 Cal. App. 4th at 518-19. This court will, therefore, look to

////

---

[5] Prior to petitioner's trial, the jury instruction was revised to remove the "equally guilty" language. This last paragraph now states: "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." Jud. Council of Cal., Criminal Jury Instructions (Fall 2010 ed.). The fact that use of the instruction may have been error under state law, does not affect this court's determination that use of the instruction did not, ultimately, result in prejudice to petitioner.

15

that right as the basis for the objection petitioner contends his trial counsel should have made at trial.

### 1. Applicable Law

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 562 U.S. at 107. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 195 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

(9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954).

### 2. Analysis

The state Court of Appeal did not address this claim. Rather, it found the claim mooted by its ruling in petitioner's first appeal, discussed above, that the jury instructions were confusing and petitioner was entitled to either a new trial or a second degree murder conviction. Torres I, 2014 WL 617671, at *10. In his first petition for review, petitioner stressed that his ineffective assistance of counsel claim remained a valid basis to overturn his conviction and obtain a retrial, in the event he was not retried. However, petitioner did not explain just why the claim survives the reduction in his conviction to second degree murder.

As recognized by the Court of Appeal, the jury may have been confused about whether or not it was required to convict petitioner of first degree murder if it found the perpetrator liable for first degree murder. However, as described above in the prior discussion, the instructions were clear that to find petitioner guilty as an aider and abettor the jury must find either first degree murder or second degree murder to have been a natural and probable consequence of the intended crime of fighting.

Given petitioner's second degree murder conviction, it cannot be said that the ineffective assistance of counsel caused petitioner prejudice. Had the challenged instruction not been given, the jury would have still been instructed on aider and abettor liability as set out above and would have returned either a first degree or second degree murder verdict. Considering the instructions as a whole, it cannot be said that the absence of the challenged instruction would have affected the verdict in any way besides a reduction in the degree of murder, which petitioner has now obtained. Because he has not demonstrated, and cannot demonstrate, that he suffered prejudice as a result of counsel's actions, petitioner's ineffective assistance of counsel claim should be denied.

Accordingly, this court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

////

1        These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  June 26, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/torr0385.fr